IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GIL A. MILLER, as Receiver for IMPACT PAYMENT SYSTEMS LLC, and IMPACT CASH LLC,<br><br>Plaintiff,<br>v.<br><br>DON KELLEY, an individual,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO STRIKE**<br><br><br>Case No.1:12-cv-00056-DN<br><br>District Judge David Nuffer |

On October 11, 2013, Gil A. Miller, the Receiver for Impact Cash and Impact Payment Systems, Inc., moved for summary judgment on his claim against Defendant Don Kelley. The claim under the Utah Uniform Fraudulent Transfer act seeks judgment in the amount of $177,000 and prejudgment interest.[1] Defendant Don Kelley responded to the Receiver's motion on February 26, 2014, by opposing the motion's factual and legal basis and requesting additional discovery under Federal Rule of Civil Procedure 56(d).[2] The Receiver responded on March 31, 2014, by filing both a reply memorandum[3] and a motion to strike[4] the declaration of Steven R. Paul,[5] which had been submitted in support of Defendant's Opposition.

---

[1] Receiver's Motion for Summary Judgment and Memorandum in Support ("Motion"), docket no. 12, filed October 11, 2013.

[2] Defendant's Opposition to Receiver's Motion for Summary Judgment ("Opposition"), docket no. 17, filed February 26, 2014.

[3] Receiver's Reply in Support of Motion for Summary Judgment ("Reply"), docket no. 21, filed March 31, 2014.

[4] Motion to Strike the Declaration of Steven R. Paul and Memorandum in Support ("Motion to Strike"), docket no. 22, filed March 31, 2014.

[5] Declaration of Steven R. Paul ("Paul Declaration"), docket no. 18, filed February 26, 2014.

After careful consideration of the undisputed facts and arguments presented, it is evident that the facts stated below are undisputed and that the Receiver is entitled to judgment as a matter of law. Accordingly, as shown below, insofar as Defendant's request for additional discovery under Rule 56(d) can be construed as a motion, it is DENIED; the Receiver's Motion to Strike is DENIED; and the Receiver's Motion for Summary Judgment is GRANTED.

Undisputed Facts........................................................................................................................... 2
Standard of Review ...................................................................................................................... 6
Analysis.......................................................................................................................................... 6
    Defendant's Request to Conduct Additional Discovery Pursuant to Rule 56(d) Is
        Denied. ........................................................................................................................ 7
    The Statute of Limitations Does Not Limit the Receiver Only to Transfers Occurring
        After March 20, 2008....................................................................................................10
    The Receiver's Motion to Strike Is Denied. ................................................................... 10
    The Ponzi Presumption Applies and Defendant Is Required Under UFTA to Return
        All Payments Received in Excess of His Investment with Prejudgment Interest. 11
        Impact was a Ponzi scheme and transfers made by Impact to Defendant are
            covered by the Ponzi presumption. .......................................................... 11
        Defendant received and must return payments in excess of his investment......... 14
        Defendant must pay prejudgment interest on the excess payments received. ...... 15
Conclusion .................................................................................................................................. 16

**UNDISPUTED FACTS**

Defendant attempts to dispute the facts as set forth by the Receiver by (1) providing legal argument in the guise of a statement of facts; (2) providing contrary facts with no supporting evidence other than his belief, or the belief of his attorney, of the truth of the matter; or (3) simply denying the fact. Defendant's attempts cannot to create an issue of fact. First, "legal arguments should not be set forth in a party's asserted fact section."[6] Second, Defendant's statements of belief and his denial of certain facts, without any supporting evidence, are

---

[6] *Chavez v. Cnty. of Bernalillo*, ___ F. Supp. ___, No. CIV 13-0309 JB/LFG, 2014 WL 936426, at *1 n.4 (D.N.M. Jan. 31, 2014).

2

insufficient to create an issue of fact. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[7]

Finally, Defendant admits to the truth of many significant facts in the case. Accordingly, as Defendant has failed to properly support his assertions of fact and has failed to properly address the Receiver's assertions of fact, the Receiver's facts,[8] set forth below unless otherwise indicated, will be considered undisputed for purposes of the motion.[9]

1. Defendant Don Kelley ("Defendant") invested $261,000 in Impact.

2. Impact and Scott Clark, Impact's owner and operator, represented to Defendant that his investment would be used to purchase lists of borrowers that had a history of repaying payday loans and to fund payday loans to Impact customers.[10]

3. Defendant began receiving payments from Impact on February 11, 2008, which payments continued until some point toward the middle of 2010.[11]

4. The total amounts paid to Defendant by Impact totaled $438,000, exceeding his original investment by $177,000.

5. The Court has already determined that Impact was operated as a Ponzi scheme.

6. Impact was determined by the Receiver to have been operated as a Ponzi scheme since at least 2006.

---

[7] *Cypert v. Indep. Sch. Dist. No. I-050*, 661 F.3d 477, 481 (10th Cir. 2011).

[8] Motion at 1–6, Receiver's Statement of Elements and Undisputed Material Facts.

[9] *See* Fed. R. Civ. P. 56(e)(2).

[10] Opposition at 9, Defendant's Statement of Additional Relevant Facts ¶ 2.

[11] Although the parties dispute whether payments ended in May or June, the exact end date is immaterial. *See* Opposition at 10, Defendant's Statement of Additional Relevant Facts ¶ 7; Reply at 3–4, Receiver's Response to Defendant's Statement of Additional Facts ¶ 7.

7. Impact's operation as a Ponzi scheme was ended by the SEC on or around March 25, 2011.[12]

8. Gil A. Miller was appointed as Receiver in this matter on March 25, 2011.

9. The Receiver and the accountants working with him conducted a thorough analysis of Impact's business operations and its accounting records, relying on the records kept at Impact and on bank records obtained by subpoena.

10. Impact's financial records were not audited by a reputable accounting firm.

11. Impact investors were promised large returns for their investments. Some investors were promised up to an 80% annual return. Others were told they would double their money in a year, or even within months. Investors were typically led to believe they were making between 30 and 40 percent in annual returns.

12. Although Impact purported to maintain balance records for each investor, those records were inaccurate. Many of the investor accounts should have had negative cash balances. As of August 9, 2010, there was a total negative balance of more than $8.3 million.

13. In order to make distributions to investors who had a negative balance, Impact's accountants would book entries in the accounting records labeled as "temp loans," effectively taking money that had been accounted for as belonging to one investor and paying it to another.

14. Investor money that was supposed to be used to fund payday loans instead came into Impact accounts and left the accounts within the same week to pay out old investors who had requested dividend payments or liquidation proceeds.

15. Impact Payment Systems had losses totaling $1,056,055 as of December 31, 2009.

---

[12] Opposition at 10, Defendant's Statement of Additional Relevant Facts ¶ 8.

16. Impact and its related companies did not show an operating profit in any year when distributions to investors were made. The Impact entities realized a collective net loss of nearly $3 million during that time.

17. Impact recorded a loss each year since at least September 2008 and used investor money to cover those losses.

18. Impact and its related companies, despite operating at a loss and carrying negative balances, distributed over $52.6 million to investors.

19. When Impact's records include an appropriate bad debt adjustment, none of the $52.6 million in payments could have been made with operating profits. The only source for these distributions was from principal by other investors.

20. Impact used investor funds that were supposed to be used for payday loans to cover expenses.

21. Impact commingled investor funds through intercompany and inter-account transfers.

22. Impact used investor funds to support Mr. Clark's standard of living.

23. Mr. Clark, alone, was principally responsible for Impact's operations.

24. After Impact's operation was ended by the SEC and the Receiver completed his analysis of Impact's business operations and its accounting records, the Receiver filed this case on March 20, 2012, seeking to recover funds improperly distributed to Defendant under the Utah Uniform Fraudulent Transfer Act ("UFTA").[13]

---

[13] Complaint, docket no. 2.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[14] Although a court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, [the opposing] party must identify sufficient evidence which would require submission of the case to a jury."[15]

## ANALYSIS

The main issue in this case is whether Impact was operated as a Ponzi scheme. If so, then the so-called "Ponzi presumption" applies. Under this presumption, the very existence of a Ponzi scheme is sufficient to establish under UFTA that the debtor had the actual intent to defraud. Thus, once it is established that a debtor acted as a Ponzi scheme, all transfers by that entity are presumed fraudulent and can be avoided.

The Receiver correctly points out that Impact has already been determined to be a Ponzi scheme and argues there is no question that the Ponzi presumption applies. In order to avoid the operation of the Ponzi presumption and the resulting grant of summary judgment in favor of the Receiver, Defendant argues that Impact was not operated wholly as a Ponzi scheme. According to Defendant, some of the payments received by Defendant were legitimate dividends as a result of Impact's payday loan business and cannot be avoided under UFTA. Defendant also argues that before summary judgment may be granted, Defendant deserves additional discovery under Rule 56(d) to allow him to present evidence in support of his argument. Further, Defendant argues that the statute of limitations under UFTA had run on at least some of the payments received by Defendant and, as such, those payments are beyond the reach of the Receiver.

---

[14] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1402 (10th Cir. 1997).

[15] *Id.*

Defendant's arguments related to Rule 56(d) and the Statute of Limitations will first be addressed. Next, the Receiver's Motion to Strike the declaration of Defendant's attorney will be discussed. Finally, this order will address the applicability of the Ponzi presumption and its operation in this case.

**Defendant's Request to Conduct Additional Discovery Pursuant to Rule 56(d) Is Denied.**

Defendant requests the Receiver's Motion for Summary Judgment be denied or, prior to deciding the Motion, that Defendant be granted additional time to conduct discovery so Defendant may adequately oppose the Receiver's Motion. Defendant states that "[d]iscovery is needed on all aspects of whether Impact was operating as a Ponzi scheme between March 2008 and March 2012."[16]

Under Rule 56(d), additional time for discovery may be permitted "[if] a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."[17] The protections of Rule 56(d) "must be invoked and can be applied only if a party satisfies certain requirements."[18] As stated by the Tenth Circuit:

> A prerequisite to granting relief [under Rule 56(d)] is an affidavit furnished by the nonmovant. Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented. This includes [1] identifying the probable facts not available and [2] what steps have been taken to obtain these facts. In this circuit, the nonmovant also must explain [3] how additional time will enable him to rebut movant's allegation of no genuine issue of fact.[19]

---

[16] Opposition at 14.

[17] Fed. R. Civ. P. 56(d)(2).

[18] *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000).

[19] *Id.* (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992)).

Further, "if the party filing the [Rule 56(d)] affidavit has been dilatory, or the information sought is either irrelevant to the summary judgment motion or merely cumulative, no extension will be granted."[20]

Defendant has failed to adequately explain why facts precluding summary judgment cannot be presented. The only reason Defendant offers for an extension of discovery is that "Defendant believes that some or all of the payments he received in repayment of his investment and interest is [sic] not proceeds of fraudulent business activities."[21] The declaration of Steven R. Paul, filed in support of Defendant's Opposition, elaborates on this statement by stating that "Defendant believes that the return on his investment came from the proceeds of the payday lending business."[22]

The "probable facts" that Defendant wishes to discover that would support his belief relate to "the specific circumstances of Impact's operations and how Mr. Kelly's invested funds were treated,"[23] "whether Mr. Kelley's records ever showed a negative balance,"[24] and "whether Mr. Kelley's records ever showed he was paid by 'new investor money.'"[25] Although it is apparent that Defendant seeks discovery on Impact's operation and finances, he does not, as is required under Rule 56(d), specify exactly what records, documents, or depositions Defendant is seeking. He does not state that there is evidence that supports his position and has not already been analyzed and included in the expert testimony already in the record. Defendant admitted that the Receiver and the accountants working with him have already conducted a thorough

---

[20] *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993) (citing *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984)).

[21] Opposition at 14.

[22] Paul Declaration ¶ 12.

[23] *Id.*

[24] *Id.* ¶ 5.

[25] *Id.* ¶ 8.

analysis of Impact's business operations and accounting records,[26] but he does not indicate what he expects to discover that has not already been thoroughly reviewed, analyzed, and made part of the record.

Defendant, in his Opposition, and Steven Paul, in his declaration, also failed to identify the steps taken to obtain the information they desire. At most we have Mr. Paul's statement that "[there] has been no discovery in this case to determine the timing of distributions to Mr. Kelley,"[27] and that "[t]here has been no discovery at this time in this case that has allowed Defendant to support [his] belief."[28] As the Receiver has explained, the cut-off date for fact discovery was August 1, 2013.[29] That date came and went without Defendant conducting any discovery about these apparently vital issues. Defendant provides no explanation for his failure to conduct any discovery, suggesting that this request is simply an attempt to stave off the return of the funds.

Further, Defendant also fails to describe how the information that might be obtained through additional discovery would rebut the Receiver's allegations. Part of the reason for this is related to his failure to explain what it is, exactly, that he seeks to achieve or obtain through discovery. Beyond that, however, Defendant has also admitted a number of critical facts that likely warrant the granting of summary judgment regardless of any extraneous facts or evidence.[30] The uses of the evidence he might find are also not specified. Defendant has not

---

[26] Opposition at 4.

[27] Paul Declaration ¶ 2.

[28] *Id.* ¶ 12.

[29] Reply at 14; Scheduling Order at 3, docket no. 9, filed January 14, 2013.

[30] Defendant does not dispute that he invested with Impact, that he received more in payments than he invested, and that the court has already determined that Impact was a Ponzi scheme. *See supra* Undisputed Facts, 1, 3–6; *see also Wing v. Gillis*, 525 Fed. Appx. 795, 798, 2013 WL 2169321, at **1 (10th Cir. 2013) (unpublished) (affirming a district court's grant of summary judgment in favor of a receiver in a Ponzi scheme case where "the [Defendants] did not challenge the Receiver's assertion that VesCor operated as a Ponzi scheme").

9

submitted any expert report to challenge the expert testimony already presented and has not moved to extend the deadline to file expert reports, which has long-since passed.[31] Any potential new evidence in support Defendant's position, even if such evidence exists, would be immaterial as it would not be able to overcome the undisputed facts and expert testimony already presented. Accordingly, as Defendant has failed to satisfy the requirements of Rule 56(d), no additional time for discovery will be granted.

### The Statute of Limitations Does Not Limit the Receiver Only to Transfers Occurring After March 20, 2008.

Defendant argues that as the UFTA has a four-year statute of limitation,[32] and because the Receiver initiated this action March 20, 2012, the Receiver therefore cannot recover any payments made before March 20, 2008. If correct, this would apparently exclude one payment of $25,000. However, the same statutory provision that establishes the four-year limitations period also provides that a claim may be brought after the four-year period as long as it is brought "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."[33] Mr. Miller was appointed as the receiver in this matter on March 25, 2011, and filed the complaint on March 20, 2012. Because the Receiver, the claimant in this case, "could not reasonably have discovered any fraudulent transfer prior to his appointment," the claim was timely brought within the one-year period allowed under UFTA.[34]

### The Receiver's Motion to Strike Is Denied.

The Receiver has moved to strike the declaration of Steven Paul, discussed above, as it contains improper legal conclusions, statements made without the requisite knowledge and

---

[31] The deadline for expert discovery was October 11, 2013. *See* Scheduling Order at 3, docket no. 9, filed January 14, 2013.

[32] *See* Utah Code Ann. § 25-6-10(1).

[33] *Id.*

[34] *Wing v. Dockstader*, 482 Fed. Appx. 361, 364 (10th Cir. 2012) (unpublished).

foundation, and other irrelevant statements. As discussed, the declaration is deficient in many regards as it relates to Defendant's request pursuant to Rule 56(d). However, it will not be stricken from the record and those portions that are irrelevant or otherwise inappropriate will be disregarded.

### The Ponzi Presumption Applies and Defendant Is Required Under UFTA to Return All Payments Received in Excess of His Investment with Prejudgment Interest.

UFTA allows a claimant to avoid a transfer if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor."[35] In the context of Ponzi schemes, "[t]he mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud."[36] This is known as the "Ponzi presumption": "Under the UFTA, once it is established that a debtor acted as a Ponzi scheme, *all* transfers by that entity are presumed fraudulent."[37] Accordingly, "[w]here causes of action are brought under UFTA against Ponzi scheme investors, the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers."[38] Thus, the Receiver must show two things to recover the payments made to Mr. Kelley: (1) that Impact was a Ponzi scheme and (2) Mr. Kelley received more in payments from Impact than he invested. As discussed below, the undisputed facts establish both of these requirements.

**Impact was a Ponzi scheme and transfers made by Impact to Defendant are covered by the Ponzi presumption.**

A Ponzi scheme is "an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of

---

[35] Utah Code Ann. § 25-6-5(1)(a).

[36] *Donell v. Kowell*, 553 F.3d 762, 770 (9th Cir. 2008) (quoting *In re AFI Holding*, 525 F.3d 700, 704 (9th Cir. 2008)) (alterations and quotation marks omitted).

[37] *Dockstader*, 482 Fed. Appx. at 363 (citing *Donell*, 533 F.3d at 770) (emphasis added).

[38] *Donell*, 553 F.3d at 770.

newly attracted investments."[39] Investors in these schemes are typically "promised large returns for their investments," and "[i]nitial investors are actually paid the promised returns, which attract additional investors."[40] As the Receiver states, Impact has already been determined to be a Ponzi scheme, and Defendant does not dispute either the fact that Impact was operated as a Ponzi scheme or the court's conclusion to that effect.[41] The Receiver has provided a number of indicia that Impact was a Ponzi scheme[42] and in his expert opinion states that Impact was operated as a Ponzi scheme since 2006. These facts are also not disputed by Defendant.[43]

Defendant's sole defense to the Ponzi scheme conclusion is the assertion that Impact actually operated as a legitimate payday lending operation, at least part of the time, and that some of Defendant's payments came from Impact's legitimate operations. Defendant argues that "[w]hether any given transaction between Defendant and Impact is covered by the Ponzi presumption needs to be examined on an individual basis. It depends on time, context and the nature of the specific transactions, and the knowledge of the parties."[44] Thus, Defendant argues that each payment must be analyzed in order to determine whether that particular transaction fraudulently originated from investor funds.

As legal authority for this defense, Defendant cites to *SEC v. Management Solutions, Inc.*[45] which dealt with a real estate property investing scheme. Defendant argues that the case

---

[39] *Jobin v. McKay (In re M&L Business Mach. Co.)*, 84 F.3d 1330, 1332 n.1 (10th Cir. 1996) (quoting *Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Invs. Assocs., Inc.)*, 48 F. 3d 470, 471 n.2 (10th Cir. 1995)).

[40] *Id.*

[41] *See* Opposition at 3, Defendant's Response to Statement of Elements and Facts ¶ 3.

[42] The Receiver has established that Impact commingled investor funds, never showed an operating profit in any year that distributions were made, used investor funds to cover operating expenses, and paid distributions to investors when the companies had negative balances. *See supra* Undisputed Facts, 11–21.

[43] *See* Opposition at 3, Defendant's Response to Statement of Elements and Facts ¶ 5.

[44] Paul Declaration ¶ 18.

[45] Civil No. 2:11-CV-1165-BSJ, 2013 WL 4501088 (D. Utah Aug. 22, 2013).

holds that every transaction by a purported Ponzi scheme operation must be examined to determine whether the Ponzi presumption applies to each transaction. However, that case noted that the Ponzi presumption has been applied in this circuit when "whatever underlying business venture existed yielded insufficient funds to pay for expenses and provide promised returns to investors."[46] Although the court suggested that the presumption should be limited to those circumstances when the purported business venture is "assetless and fraudulent from day one,"[47] this is not the law in this circuit. As the Receiver points out, the Tenth Circuit has found enterprises to be Ponzi schemes even when there is a legitimate, underlying business operation that manages to produce some amount of revenue.[48] Further, the *Management Solutions* case is factually distinguishable as the business entities involved "display[ed] characteristics of commercial schizophrenia," with the Ponzi-like activity "flow[ing] in waves," with some actions "sometimes legitimate, sometimes patently unlawful."[49]

      Although Impact might have had some legitimate business operations, it never was a successful payday lending operation and could never cover its expenses or distributions with legitimate funds. The mere fact that there was a legitimate side of the Ponzi scheme is neither surprising nor dispositive, as a Ponzi scheme "is always founded upon some legitimate business enterprise . . . . Investors are encouraged to invest or lenders to loan based upon the appearance

---

[46] *Id.* at *19.

[47] *Id.* at *21.

[48] *See, e.g., Jobin,* 84 F.3d at 1332 ("In the mid-1980s, officers of the debtor M & L began running a Ponzi scheme[] [u]sing the company's legitimate operations as a computer sales and leasing company as a front."); *Sender v. Simon,* 84 F.3d 1299, 1301–02 (10th Cir. 1996) (discussing "an elaborate and long-running Ponzi scheme" in which its operator "used invested funds to trade in securities options over the life of the operation, [which] trading resulted in net profits in a few years").

[49] *Id.* at *21–22.

of a profitable legitimate business."[50] Even if Impact operated in part as a legitimate payday lending operation and even if it actually collected some revenue from this operation, this would not change the undisputed fact that Impact operated at a loss each year, including the years it made payments to Defendant. Impact's returns to investors could not have been "financed through the success of the underlying business venture"[51] as the underlying business venture was unsuccessful. Defendant has offered no evidence that could dispute these facts.

Even if Defendant had provided evidence that some of his payments originated from Impact's legitimate operations, which he has not, Impact and its related companies were operated as a Ponzi scheme overall, as Defendant has admitted.[52] The Receiver is not required to "trace the transfers and demonstrate whether [the transfers] were return of principal or profit," or to "match up each investment with each payment made by the debtor and follow the parties' characterization of the transfers."[53] The Receiver has established that the only source for the large returns paid by Impact to its investors, including Defendant, could only be other investors' money. Defendant's belief that his payments came from legitimate sources cannot alter the fact that Impact had no profits or income, other than investor money, to make those payments. Accordingly, the Ponzi presumption covers all of the payments made to Mr. Kelley.[54]

**Defendant received and must return payments in excess of his investment.**

Defendant admits to receiving $177,000 in excess of his investment. As the Ponzi presumption applies, the transfers of this amount are fraudulent under the UFTA and can be

---

[50] *In re LLS America, LLC*, 2013 WL 3305393, at *8 (Bankr. E.D. Wash. July 1 2013); *see also Jobin*, 84 F.3d at 1332 (describing a Ponzi scheme that "[used] the company's legitimate operations as a computer sales and leasing company as a front").

[51] *Jobin*, 84 F.3d at 1332 n.1.

[52] *See* Opposition at 3, Defendant's Response to Statement of Elements and Facts ¶¶ 3 & 5.

[53] *Donell*, 553 F.3d at 773.

[54] *See Dockstader*, 482 Fed. Appx. at 363 (citing *Donell*, 533 F.3d at 770) ("Under the UFTA, once it is established that a debtor acted as a Ponzi scheme, *all* transfers by that entity are presumed fraudulent.") (emphasis added).

avoidable by the Receiver unless Defendant can raise a viable defense.[55] As Defendant has neither asserted any of the statutory defenses available under UFTA nor disputed that his equitable defenses are unavailing, Defendant is liable for all payments received in excess of his investment.

**Defendant must pay prejudgment interest on the excess payments received.**

The Receiver's argument that Defendant should be required to pay prejudgment interest on the amount he received in excess of his investment is persuasive. Although Defendant claims that prejudgment interest penalizes him for the wrongdoing of Scott Clark, without such an award Defendant will have benefited from an interest-free loan, allowing Defendant to receive more from the scheme than he had invested.[56] In effect, not awarding prejudgment interest rewards Defendant for Mr. Clark's wrongdoing and rewards Defendant for extending litigation on the matter. Defendant, though innocent of any wrongful involvement in the underlying scheme, should not obtain an unearned windfall because he happened to be one of the few who managed to benefit from the Ponzi scheme, gaining the benefit of the time value of the money at the expense of other, less-fortunate investors.[57] An award of prejudgment interest simply ensures that Defendant actually "return[s] the net profits of his investment."[58] Thus, Defendant must pay prejudgment interest on payments received in excess of his investment from the date of those payments' receipt.

---

[55] *Management Solutions, Inc.*, 2013 WL 4501088, at *6.

[56] *See Wing v. Gillis*, 525 Fed. Appx. 795, 801, 2013 WL 2169321, at **4 (10th Cir. 2013) (unpublished).

[57] *Id.*

[58] *Donell*, 533 F.3d at 770 (quoting *Scholes v. Lehmann*, 56 F.3d 750, 757–58 (7th Cir. 1995)).

## CONCLUSION

For the foregoing reasons, the Receiver's Motion for summary judgment[59] is GRANTED, and Receiver's Motion to Strike[60] and Defendant's request for additional discovery are both DENIED.

The Receiver may file a motion detailing his request for prejudgment interest including the requested interest rate and calculation of the amount by November 10, 2014. Defendant may file a response by November 24, 2014.

Signed October 27, 2014.

BY THE COURT

_____
District Judge David Nuffer

---

[59] Docket no. 12, filed October 11, 2013.
[60] Docket no. 22, filed March 31, 2014.